UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOHN G.,

                Plaintiff,

-v-

ANDREW SAUL,
Commissioner of Social Security,

                Defendant.

19-CV-01203-MJR
DECISION AND ORDER

---

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 15)

Plaintiff John G.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying his applications for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 8) is granted, defendant's motion (Dkt. No. 13) is denied and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed an application for DIB on February 24, 2016, alleging disability since August 6, 2015. (Administrative Transcript ["Tr."] 169-170). After Plaintiff's application was denied at the initial level, he requested a hearing by an Administrative Law Judge ("ALJ"). (Tr. 103-104). A video hearing was held before ALJ William M. Manico on March 20, 2018. The ALJ presided from Alexandria, Virginia, while Plaintiff and his counsel appeared in Buffalo, New York. (Tr. 35-79). A vocational expert also appeared.

On September 24, 2018, the ALJ issued an unfavorable decision. (Tr. 7-29). That decision became final when on July 19, 2019, the Appeals Council denied Plaintiff's request for review. (Tr. 1-6). This action followed.

## DISCUSSION

I.   *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. <u>Standards for Determining "Disability" Under the Act</u>

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment

or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.*

§§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is

not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III. *The ALJ's Decision*

At step one, the ALJ found that Plaintiff had not engaged in substantial activity during the period from his alleged onset date, August 6, 2015. (Tr. 12). At step two, the ALJ concluded that Plaintiff has the following severe impairments: depression; posttraumatic stress disorder ("PTSD"); agoraphobia; anxiety; schizophrenia; and attention deficit hyperactivity disorder. (Tr. 12-13). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 13-15). Before proceeding to step four, the ALJ assessed Plaintiff's RFC, in pertinent part, as follows:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant should avoid exposure to hazards. The claimant retains the mental residual functional capacity to perform unskilled work, which allows him a regular work break approximately every two hours and where interactions with others is limited to only occasional.

(Tr. 15). Proceeding to step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (Tr. 23-24). At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that existed in significant

numbers in the national economy that Plaintiff can perform, such as Mail Clerk, Laundry Sorter, Order Picker, Janitor, and Cleaner. (Tr. 24-25). Accordingly, the ALJ concluded that Plaintiff has not been under a disability under the Act, from the alleged onset date through the date of the ALJ's decision. (Tr. 25).

IV.     *Plaintiff's Challenges*

Plaintiff argues, *inter alia,* that the ALJ's mental RFC determination is not supported by substantial evidence because he failed to give controlling weight to any of the medical opinions in the record and instead relied upon his own lay opinion. Therefore, Plaintiff argues, remand is required. The Court agrees.

An RFC assessment "is the most [a claimant] can still do despite [their] limitations." 20 C.F.R. § 404.1545. An ALJ must assess the claimant's RFC by using "all the relevant evidence in [the] case record." *Id.* However, there must be "substantial medical evidence to support his opinion." *Salone v. Berryhill,* No. 6:16-CV-06491-MAT, 2018 WL 6333421, at *2 (W.D.N.Y. Dec. 5, 2018) (quoting *Goldthrite v. Astrue,* 535 F.Supp.2d. 329, 339 (W.D.N.Y. 2008) (remanding when RFC finding not supported by substantial evidence). An ALJ is not qualified to rely on only "raw medical data" to determine a claimant's limitations or to craft an RFC. *Henderson v. Berryhill,* 312 F. Supp. 3d 364, 371 (W.D.N.Y. 2018) (holding ALJ was not permitted to rely on treatment notes to craft an RFC after rejecting medical opinions). Rather, an ALJ should rely on medical opinion evidence, based on that raw data, to address the claimant's "functional or work capacity limitations." *Jermyn v. Colvin,* No. 13-CV-5093 (MKB), 2015 WL 1298997, at *19 (E.D.N.Y. Mar. 23, 2015) (remanding when ALJ relied on record with no expression of functional limitations); see *Perkins v. Berryhill,* No. 17-CV-6327-FPG, 2018 WL 3372964, at *4 (W.D.N.Y. July

11, 2018) (citing *Ford v. Colvin*, No. 12-CV-301A, 2013 WL 4718615, at *8 (W.D.N.Y. Sept. 3, 2013) (remanding where ALJ did not explain how plaintiff's treatment evidence supported his RFC findings).

"Where the record is 'devoid of any opinions from ... medical sources regarding [the] Plaintiff's functional or work capacity limitations, ... the ALJ [is] obligated to develop the record and obtain RFC assessments[.]'" *Salone*, 2018 WL 6333421, at *2 (quoting *Jermyn*, 2015 WL 1298997, at *19). Failure to do so requires remand. *Id.*; see *Evans v. Berryhill*, No. 16-CV-801 (MAT), 2018 WL 1377122, at *3 (W.D.N.Y. Mar. 19, 2018) (citing *Snyder v. Colvin*, No. 5:13-CV-585 GLS/ESH, 2014 WL 3107962, at *4 (N.D.N.Y. July 8, 2014)) (remanding when ALJ relied on lay interpretation of medical records leaving a gap regarding functional limitations).

Here, the ALJ's determination of the Plaintiff's mental RFC is not supported by substantial evidence. The ALJ found that Plaintiff could perform unskilled work and could have occasional interactions with others. (Tr. 15). However, it is unclear how the ALJ determined these limitations, as he did not rely on any medical opinion evidence. He gave only partial or limited weight to every opinion on the record. (Tr. 21-22). He assigned only limited and partial weight to the opinions of Plaintiff's treating physician, and only partial weight to the consultative examination opinion. (Tr. 22). He further gave little weight to the GAF scores on the record. (Tr. 23). In failing to assign controlling weight to any opinion, the ALJ instead relied on his own interpretation of the raw medical data in the record. *See Sherry v. Berryhill*, No. 1:17CV01102 (HBF), 2019 WL 441597, at *5 (W.D.N.Y. Feb. 5, 2019) ("The Court cannot conclude that there was substantial evidence to support the ALJ's RFC determination ... and is left without a clear indication of how the

ALJ reached the RFC determination without resorting to impermissible interpretation of raw medical data."). The ALJ needed to tether his RFC to a medical opinion. *See Garcia Medina v. Comm'r of Soc. Sec.*, No. 17-CV-6793-JWF, 2019 WL 1230081, at *2 (W.D.N.Y. Mar. 15, 2019) ("The [RFC] here was not tethered to any particular medical opinion evidence. Indeed, the ALJ gave 'limited weight' to all three of the opinions she addressed. Because the ALJ here did not give controlling or substantial weight to any opinion that supported the RFC, it is unclear precisely where the limitations set forth in the RFC came from and why they did not go further."). In addition, an ALJ may not "cherry pick" from a medical opinion, *i.e.*, he may not credit evidence that supports administrative findings while ignoring conflicting evidence from the same source. *Younes v. Colvin*, No. 1:14-CV-170 (DNH/ESH), 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015) (" 'Cherry picking' can indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both.").

Further, as the ALJ found at step two, Plaintiff has severe mental impairments, namely, depression, PTSD, agoraphobia, anxiety, schizophrenia, and attention deficit hyperactivity disorder. (Tr. 12-13). While there are some cases where an ALJ may use "common sense" to determine the limitations in an RFC determination, he may not do so where there are severe mental impairments. See *Jones v. Colvin*, No. 14-CV-556S, 2015 WL 5126151, at *4 (W.D.N.Y. Sept. 1, 2015) ("Here, because the ALJ concluded that Plaintiff's depression was significant enough to constitute a severe impairment, his subsequent failure to obtain a medical assessment of the extent of that impairment from either a treating or consultative examiner quantifying Plaintiff's mental limitations rendered the record incomplete."). While ALJs have leeway to make "common sense

judgments," this "does not typically extend to the determination of mental limitations, which are by their very nature 'highly complex and individualized.'" *Dye v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 386, 392-93 (W.D.N.Y. 2019) (remanding where ALJ made RFC determination without opinion evidence, because mental impairments are "by their very nature highly complex and individualized"); *see also Lilley v. Berryhill*, 307 F.Supp.3d 157, 161 (W.D.N.Y. 2018) (quoting *Nasci v. Colvin*, No. 6:15-CV-0947(GTS), 2017 WL 902135, at *26 (N.D.N.Y. Mar. 7, 2017)) (remanding, finding that without opinion evidence with respect to mental impairments, the ALJ did not satisfy duty to complete the record); *Deshotel v. Berryhill*, 313 F. Supp. 3d 432, 435 (W.D.N.Y. 2018) (remanding, holding that ALJ may not make common sense judgments with regard to mental limitations as they are "highly complex and individualized.").

Particularly problematic is the ALJ's finding in his RFC that the Plaintiff could have occasional interactions with others. This finding appears to be inconsistent with the ALJ's own decision and the Social Security regulations. As stated above, at step two of his analysis, the ALJ found, *inter alia*, that Plaintiff suffers from the severe impairment of agoraphobia. Further, S.S.R. 83-10 provides that "occasional" means "occurring from very little up to one-third of the time." S.S.R. 83-10, 1983 WL 31251 (S.S.A. Jan 1, 1983). The ALJ fails to provide any explanation or analysis as to how Plaintiff, who is severely agoraphobic, could have contact and interact with others for up to one-third of a work day.

Finally, because the ALJ rejected all medical opinions assessing Plaintiff's mental limitations, he should have obtained new medical opinion evidence. Without a medical opinion, the ALJ has left a gap in the record requiring further development. *Rosa v.*

*Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (rejecting medical opinion left gaps in the record triggering duty to develop the record). "As a general rule, where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations ..., to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing." *Nanartowich v. Comm'r of Soc. Sec. Admin.*, No. 17-CV-6096P, 2018 WL 2227862, at *11–12 (W.D.N.Y. May 16, 2018) (quoting *Gross v. Astrue*, No. 12-CV-6207P, 2014 WL 1806779, at *18 (W.D.N.Y. May 7, 2014)). Here, the ALJ should have obtained a new opinion assessing Plaintiff's mental limitations.

In sum, because the ALJ's mental RFC finding is not supported by substantial evidence, the case must be remanded.[3]

---

[3] Plaintiff also argues that the ALJ erred by not properly assessing his credibility and improperly rejecting his treating physician's medical opinions. The defendant should address these issues on remand. In particular, the defendant should address the treating physician's opinion that the Plaintiff would miss up to four days of work per month.

## CONCLUSION

For the reasons stated, Plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is granted, the Commissioner's motion for judgment on the pleadings (Dkt. No. 13) is denied, and this case is remanded for further administrative proceedings consistent with this Decision and Order.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   January 13, 2021
         Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge